UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MIGUEL CARDONA INOSTROZ,

Petitioner,

v.

MICHAEL MARTEL, Warden,[1]

Respondent.

Case No. 17-cv-05577-HSG (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

Before the Court is the *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Petitioner Miguel Cardona Inostroz challenging the validity of a judgment obtained against him in state court. Respondent has filed an answer to the petition, Dkt. No. 4, and Petitioner has filed a traverse, Dkt. No. 8. For the reasons set forth below, the petition is denied.

**I.     PROCEDURAL HISTORY**

On July 9, 2013, a jury found Petitioner guilty of murder in the second degree enhanced by personal discharge of a firearm, assault with a firearm enhanced by personal use of the firearm and infliction of great bodily injury, and possession of a firearm by a felon. Dkt. No. 4-4, Clerk's Transcript ("CT"), 2CT 271-276; Dkt. No. 4-8, Reporter's Transcript ("RT"), 4RT 453-455. On July 10, 2013, in a bifurcated court trial of the prior offenses, the trial court found that Petitioner had two prior convictions that were strike offenses and serious felonies. 2CT 278-281; 4RT 451-452, 462-463. The trial court struck the "prison-prior" enhancement alleged for one of the two prior convictions. 2CT 281; 4RT 462. On October 24, 2013, the trial court sentenced Petitioner to an aggregate term of 112-years-to-life. 2CT 289-290, 296-298.

On October 24, 2016, the California Court of Appeal affirmed the judgment on direct appeal. Dkt. No. 4-10, Ex. 6.

On February 1, 2017, the California Supreme Court denied review. Dkt. No. 4-10, Ex. 8.

---

[1] Michael Martel, the current warden of the prison where Petitioner is incarcerated, has been substituted as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

On September 26, 2017, Petitioner filed the instant petition in this Court. Dkt. No. 1. He raised the following two claims that his due process rights were violated: (1) when the trial court failed to instruct the jury with the *Dewberry*[2] instruction (CALJIC No. 8.72), i.e., that it must convict Petitioner of involuntary manslaughter if it had reasonable doubt as to his culpability for murder; and (2) by the admission of "prior bad acts" evidence that he contends was so inflammatory that its admission rendered his trial unfair. *Id.* at 5, 9.[3]

## II. STATEMENT OF FACTS

The following factual background is taken from the October 24, 2016 opinion of the California Court of Appeal:[4]

### I. The Prosecution's Case.
On September 20, 2011, Nicole Silva (Nikki), Shanese Bode, and Maiko Ross moved their three dogs and belongings out of their foreclosed residence (hereinafter, the house), put their belongings into storage, and checked into a room at the La Quinta Inn in Hayward, where the housemates intended to stay for a few days before moving to Tracy. Defendant and a couple, Joann White and Tim Gamble, helped them move. Silva and defendant had been friends since childhood.

Also within this group of friends was James Parkins (Lucy), who, like defendant, regularly visited the house.[FN 2] Two days earlier, defendant ran into Parkins as he was leaving the house. As Ross later recalled, she could hear Parkins and defendant arguing on the front porch about money. Specifically, defendant was angry about money taken from his

---

[2] In *People v. Dewberry*, "the jury was instructed that: (1) if it had a reasonable doubt as to the defendant's guilt, he was to be acquitted; (2) if it had a reasonable doubt as to whether the defendant was guilty of first degree or second degree murder, it could convict him only of second degree murder; and (3) if it had a reasonable doubt as to whether the killing was manslaughter or justifiable homicide, the defendant was to be acquitted." 51 Cal. 2d 548, 554 (1959). The trial court refused the defendant's request for the additional instruction that if the jury had a reasonable doubt as to whether defendant was guilty of murder or manslaughter, it could convict him only of manslaughter. *Id.* The California Supreme Court held that this was error: "[W]hen the evidence is sufficient to support a finding of guilt of both the offense charged and a lesser included offense, the jury must be instructed that if they entertain a reasonable doubt as to which offense has been committed, they must find the defendant guilty only of the lesser offense." *Id.* at 555.

[3] Page number citations for the parties' filings refer to those assigned by the Court's electronic filing system and are located at the top right-hand corner of each page.

[4] The Court has independently reviewed the record as required by AEDPA. *Nasby v. McDaniel*, 853 F.3d 1049, 1055 (9th Cir. 2017). Based on its independent review, the Court finds that it can reasonably conclude that the state appellate court's summary of facts is supported by the record and that this summary is therefore entitled to a presumption of correctness, *Taylor v. Maddox*, 366 F.3d 992, 999-1000 (9th Cir. 2004), *abrogated on other grounds*, *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014), unless otherwise indicated in this order.

food stamp card after he left the card at the house the previous night. Defendant blamed Parkins for this loss, telling her, "I've killed people for less."

[FN 2:] Lucy was a transgender who identified as female.

Days later, at about 3:00 or 4:00 p.m. on September 20, the day of the move, the group of friends congregated at the room rented by White and Bode at the La Quinta Inn. Shortly thereafter, Silva, Bode and White left to go shopping and, a bit later, Gamble left to pick up food at a nearby Burger King. Once everyone had returned, Silva telephoned Parkins and a plan was made for Parkins to pick Silva up at the hotel so they could run errands. During this call, defendant took his .38 caliber revolver and placed it in the back of his pants.[FN 3]

[FN 3:] Earlier that day, Bode had accidentally sat on defendant's gun, which had been left on the seat of the truck they were using, prompting defendant to apologize and move the weapon.

Parkins arrived at the hotel about 5:48 p.m. with her pet Chihuahua. She went to a chair in the back of the room and began chatting with Bode and Ross. Just seconds later, defendant left the bed where he was sitting with others and approached Parkins, asking, "Where's my money?" Parkins tried to give defendant a $20 bill, but defendant slapped her hand away, stating, "Fuck that. What else you got?" Defendant proceeded to rummage through Parkins' purse. When Parkins tried to pull her purse away, defendant pistol-whipped her on the head with the butt of his gun, which he was holding by the barrel in his right hand. Parkins continued to struggle with defendant, prompting defendant to grab her by the hair with his left hand and pull her out of the chair toward him.

At this point Silva intervened, yelling and attempting to pull defendant from Parkins by grabbing his arm. Defendant, still holding Parkins by the hair in his left hand and the gun in his right hand, pulled away from Silva's grasp. As he did so, the gun fired, the single bullet entering Parkins' left shoulder, passing through her chest cavity and perforating her left lung and aorta before lodging in her pelvis. Defendant immediately fled the scene. Parkins died a short time later from a massive hemorrhage.[FN 4]

[FN 4:] The coroner testified that Parkins' cause of death was massive bleeding from a single bullet that entered her left shoulder area and perforated her aorta.

Hotel surveillance video shows defendant running from the hotel at about 5:54 p.m., six minutes after Parkins' arrival. White and Gamble also left the hotel, but Bode, Ross and Silva stayed and contacted police. At about this time, Raul Medina, another friend of the group, arrived at the hotel with his mother. Medina left the room with Parkins' purse and phone before police arrived; however, officers later located Medina with Parkins' belongings at a nearby Target store. After some discussion, Silva and Bode identified defendant as the shooter.

A week later, on September 28, 2011 at 8:10 p.m., police officers located defendant in a vehicle and attempted to detain him by activating their lights and siren. Defendant

3

United States District Court
Northern District of California

accelerated, attempting to flee by car, before abruptly stopping the car to flee on foot. Eventually, defendant was caught, subdued and arrested.

At trial, Ross testified that she had told her housemates about defendant's argument with Parkins over money two days before the shooting, a fact Silva subsequently denied. Ross also testified that she told the police about defendant's and Parkins' argument. However, it was stipulated by the parties at trial that there was no mention of their argument in any of the police reports filed in this case.

**II. The Defense Case.**
Silva testified on defendant's behalf, stating her belief that defendant was waving his gun indiscriminatingly while dragging Parkins by the hair through the room. It was at this point, Silva stated, that defendant's gun discharged by accident. As Silva recalled, just as she managed to pull defendant's wrist down as they struggled for control of the gun, it fired.[FN 5]

[FN 5:] Silva was a convicted felon.

**III. The Verdict, Sentencing and Appeal.**
On July 9, 2013, the jury found defendant guilty of second degree murder, assault with a firearm, and being a felon in possession of a firearm, and found true the enhancements for personal use of and personal and intentional discharge of a firearm, and for infliction of great bodily injury. In a bifurcated trial, the trial court found true the alleged prior Strike offenses and prior prison term.

On October 24, 2013, the trial court sentenced defendant to an aggregate term of 112 years to life. This sentence consisted of 45 years to life on count one, plus 25 years to life for the personal and intentional discharge enhancement; 25 years to life on count two, plus seven years total for the firearm use and great bodily injury enhancements; a stayed 25 year-to-life term for count three; and five years each for the two prior serious felony convictions. Defendant subsequently filed a timely notice of appeal.

*People v. Inostroz*, No. A140482, 2016 WL 6212026, *1-2 (Cal. Ct. App. Oct. 24, 2016) (footnotes in original and brackets added).

**III. DISCUSSION**

**A. Standard of Review**

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the

4

basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Section 2254(d)(1) restricts the source of clearly established Federal law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003). A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 405-06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

5

1    On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). In applying the above standards on habeas review, the Court reviews the "last reasoned decision" by the state court. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Cannedy v. Adams*, 706 F.3d 1148, 1156 (9th Cir.), *amended*, 733 F.3d 794 (9th Cir. 2013).

In its unpublished disposition issued on October 24, 2016, the state appellate court addressed the merits of Petitioner's two claims. *Inostroz*, 2016 WL 6212026, *4-8. Therefore, the last reasoned decision as to these claims is the California Court of Appeal's unpublished disposition. *See Wilson*, 138 S. Ct. at 1192; *Cannedy*, 706 F.3d at 1156.

The Supreme Court has repeatedly affirmed that under AEDPA, there is a heightened level of deference a federal habeas court must give to state court decisions. *See Hardy v. Cross*, 565 U.S. 65, 66 (2011) (per curiam); *Harrington v. Richter*, 562 U.S. 86, 97-100 (2011); *Felkner v. Jackson*, 562 U.S. 594 (2011) (per curiam). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Id.* at 1307 (citation omitted). With these principles in mind, the Court addresses Petitioner's claims.

### B.   Petitioner's Claims

As mentioned above, Petitioner raises two due process claims, arguing that the trial court erred by: (1) failing to *sua sponte* instruct the jury with the *Dewberry* instruction; and (2) admitting "prior bad acts" evidence. Dkt. No. 1 at 5, 9.

#### 1.   Claim 1: *Dewberry* Jury Instruction

The California Court of Appeal elaborated on Petitioner's claim relating to the trial court's failure to *sua sponte* give the *Dewberry* instruction, stating as follows:

> Here, the instructional challenge relates to the court's failure to give a "*Dewberry* instruction," such as that embodied in CALJIC No. 8.72. This standard instruction instructs jurors that, "[i]f any juror is convinced beyond a reasonable doubt that the killing was unlawful, but that juror has a reasonable doubt whether the crime is murder or manslaughter, that juror must give the defendant the benefit of that doubt and find it to be manslaughter rather than murder." The People, to the contrary, dispute any instructional

6

error occurred, pointing to the trial court's giving of a different instruction, CALCRIM No. 640, which they say adequately advised jurors of what to do if they have reasonable doubt as to whether defendant committed the greater or lesser offense.[FN 7]

[FN 7:] CALCRIM No. 640, as read in this case, instructed the jury as follows: "You will be given verdict forms for guilty and not guilty of first and second degree murder and involuntary manslaughter. [¶] You may consider these different kinds of homicide in whatever order you wish, but I can accept a verdict of guilty or not guilty of involuntary manslaughter only if all of you have found the defendant not guilty of first and second degree murder. [¶] As with all of the charges in this case, to return a verdict of guilty or not guilty on a count, you must all agree on that decision. [¶] Follow these directions before you give me any completed and signed final verdict form. Return the unused verdict form to me, unsigned. [¶] 1. If all of you agree that the People have proved beyond a reasonable doubt that the defendant is guilty of murder and the degree, complete and sign that verdict form. Do not complete or sign any other verdict forms. [¶] 2. If all of you cannot agree whether the defendant is guilty of first degree murder, inform me that you cannot reach an agreement and do not complete or sign any verdict forms. [¶] 3. If all of you agree that the defendant is not guilty of first degree murder, then you must consider second degree murder. If all of you agree that the People have proved beyond a reasonable doubt that the defendant is guilty of second degree murder, complete and sign that verdict form. [¶] 4. If all of you agree that the defendant is not guilty of second degree murder, but also agree that the defendant is guilty of involuntary manslaughter, complete and sign the form for not guilty of first and second degree murder and the form for guilty of involuntary manslaughter. Do not complete or sign any other verdict forms. [¶] 5. If all of you agree that the defendant is not guilty of first and second degree murder but cannot agree whether the defendant is guilty of involuntary manslaughter, complete and sign the form for not guilty of first and second degree murder and inform me that you cannot reach further agreement. Do not complete or sign any other verdict forms. [¶] 6. If all of you agree that the defendant is not guilty of first and second degree murder or involuntary manslaughter, complete and sign the verdict forms for not guilty of each crime. Do not complete or sign any other verdict forms."

*Inostroz*, 2016 WL 6212026, *4 (footnotes in original and brackets added). However, the state appellate court noted that according to Petitioner, CALCRIM No. 640 was "inadequate in this case because it failed to specifically instruct jurors 'that the benefit of any reasonable doubt regarding whether he committed murder or involuntary manslaughter' must inure in his favor." *Id.* at *5. The state appellate court disagreed with Petitioner, considered the "totality of the jury charge in this case," and determined that "there [was] no reasonable likelihood the jury misunderstood or misapplied the applicable law notwithstanding the court's failure to give CALJIC No. 8.72 or the equivalent." *Id.* Specifically, the state appellate court determined that CALCRIM No. 640 "as a whole adequately conveyed the import of *Dewberry*—to wit, that "a criminal defendant is entitled to the benefit of a jury's reasonable doubt with respect to all crimes with lesser degrees or related

or included offenses—notwithstanding the trial court's failure to also give the jury CALJIC No. 8.72." *Id.* at *6 (citations omitted). In making this determination, the state appellate court stated as follows:

> As the case law makes clear, a *Dewberry* instruction is intended to supplement the standard criminal instruction that, if the jury has a reasonable doubt as to the defendant's guilt, it must acquit, by clarifying that, if the jury has a reasonable doubt as to whether the defendant committed a charged offense or the lesser included offense, it must convict only on the lesser offense. (*People v. Dewberry, supra*, 51 Cal. 2d at pp. 557-558.) Thus, in *People v. Crone*, *supra*, the reviewing court held that the reasonable doubt instruction given to the jury was inadequate because, while the instruction "addresses the effect of reasonable doubt on the choice between conviction and acquittal, [it does] not [address] the choice between a greater and a lesser included offense." (54 Cal. App. 4th at p. 78.)
>
> Here, to the contrary, the jury was in fact instructed regarding when it must return a verdict of guilty on the lesser offense of involuntary manslaughter rather than the greater offense of second degree murder. Specifically, the jury was first instructed on the fundamental principle that, to find defendant guilty of murder, the People had the burden of proving beyond a reasonable doubt that "defendant acted with intent to kill or conscious regard for human life. *If the People have not met either of these burdens, you must find the defendant not guilty of murder*." Next, the jury was instructed that it would "be given verdict forms for guilty and not guilty of first and second degree murder and involuntary manslaughter. [¶] You may consider these different kinds of homicide in whatever order you wish, but *I can accept a verdict of guilty or not guilty of involuntary manslaughter only if all of you have found the defendant not guilty of first and second degree murder*. [¶] As with all other charges in this case, to return a verdict of guilty or not guilty on the count, you all must agree on that decision." Then, the charge further advised that, if jurors agree defendant is not guilty of first degree murder, they must consider second degree murder and, if they all agree the People have proved beyond a reasonable doubt that he is guilty of second degree murder, they must complete and sign that verdict form. However, if all jurors agree defendant is not guilty of second degree murder, and then all agree he is guilty of involuntary manslaughter, jurors must "*complete and sign the form for not guilty of first and second degree murder and the form for guilty of involuntary manslaughter*." If, on the other hand, all jurors agree defendant is not guilty of murder, but cannot agree whether he is guilty of involuntary manslaughter, jurors must "complete and sign the form for not guilty of first and second degree murder and inform [the judge] you cannot reach further agreement." And, finally, if all jurors agree defendant is not guilty of murder or involuntary manslaughter, jurors must "complete and sign the verdict forms for not guilty of each crime."
>
> These instructions, considered together, made clear to the jurors that, if they had a reasonable doubt about whether defendant committed second degree murder but unanimously agreed he committed involuntary manslaughter, they must give defendant the benefit of this doubt by finding him guilty only of the latter. Emphasizing this point, the jurors were informed that, although they could consider the charged and lesser included homicide offenses in whatever order they desired, they could not convict defendant of the lesser offense of involuntary manslaughter unless they unanimously agreed he was not guilty of first or second degree murder.

8

*Id.* at *5-6. The state appellate court concluded that the instructions, as given, correctly stated the law and likely did not mislead the jury and that even assuming error for failing to give CALJIC No. 8.72, such an error was harmless, stating:

> Finally, even assuming for the sake of argument that the trial court erred by not giving CALJIC No. 8.72, we would nonetheless find no grounds for reversal. Indeed, there was a wealth of evidence indicating that defendant acted with malice. To wit, the record reflects that, upon learning Parkins was coming to the hotel room, defendant put his .38 caliber revolver in his pants. Then, once Parkins arrived, defendant violently confronted her, grabbing her by the hair, slapping away the money she offered him in repayment, and striking her in the head with the butt of his gun. This conduct, of course, followed defendant's warning to Parkins two days earlier that "I've killed people for less."[FN 8]
>
> [FN 8:] As we will discuss in Section II, contrary to defendant's contention, the evidence of defendant's warning statement to the victim two days before the crime was properly admitted by the trial court as more probative (of intent) than prejudicial.
>
> And, even more significant for purposes of our inquiry, the jury found true the special allegation that defendant personally and intentionally discharged a firearm, causing great bodily injury to Parkins within the meaning of section 12022.53, subdivision (d), a finding not challenged on appeal. Thus, the jury implicitly rejected any theory that defendant accidentally fired his weapon, rendering inconsequential any misdirection of the jury with respect to their option of finding him guilty of the lesser included offense of involuntary manslaughter rather than second degree murder.[FN 9] (*See People v. Koontz* (2002) 27 Cal. 4th 1041, 1085–1086 ["Error in failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual questions posed by the omitted instructions adversely to defendant under other properly given instructions"].)
>
> [FN 9:] As explained by CALJIC 17.19, "[t]he term 'personally used a firearm,' . . . means that the defendant must have intentionally displayed a firearm in a menacing manner, intentionally fired it, or intentionally struck or hit a human being with it."
>
> Accordingly, having considered the record as a whole, we reject defendant's claim that, but for instructional error, it was reasonably probable the jury would have acquitted him of second degree murder. (*See People v. Crone*, *supra*, 54 Cal. App. 4th at pp. 78–79.)[FN 10]
>
> [FN 10:] We also reject defendant's argument that, because the purported instructional error violated his federal due process rights, we must apply the more stringent standard of prejudice. (*See Chapman v. California* (1968) 367 U.S. 18 (reversal required unless the prosecution proves that it is clear beyond a reasonable doubt the jury would have convicted the defendant of the charged crime notwithstanding the error].) As the California Supreme Court has explained, "federal law has no effect on the appropriate standard of California appellate review when, in a noncapital case, the defendant challenges his otherwise valid conviction of a charged offense on grounds the trial court failed in its sua sponte duty under California law to provide instructions, correct and

complete, on all lesser included offenses . . . ." (*People v. Breverman* (1998) 19 Cal. 4th 142, 172.)

*Id.* at *6 (footnotes in original and brackets added).

First, Petitioner argues in his traverse that "[t]he process due under the United States Constitution was not afforded to Petitioner by the trial court's refusal to properly instruct the jury [with the *Dewberry* instruction]." Dkt. No. 8 at 2. To the extent that Petitioner is arguing that he had a constitutionally protected liberty interest in an instruction under *Dewberry*, such an argument fails. Under limited circumstances, a state statute may create a "liberty interest" protected by the federal right to due process that is enforceable in federal habeas corpus. *See Bonin v. Calderon*, 59 F.3d 815, 841 (9th Cir. 1995). Notably, Petitioner does not assert that any state statute entitles him to have a trial court *sua sponte* give the instruction outlined in *Dewberry*. Nonetheless, if the state permits its appellate courts to cure the deprivation of state law, as the state appellate court could do if an error had occurred, at most, any state-created right constitutes a "qualified" liberty interest. *Arreguin v. Prunty*, 208 F.3d 835, 837-47 (9th Cir. 2000) (citing *Clemons v. Mississippi*, 494 U.S. 738, 746 (1990)) *overruled on other grounds by U.S. v. Buckland*, 289 F.3d 558, 564 (9th Cir. 2002). Here, the state appellate court's determination that the jury instructions as a whole were adequate and that any error was harmless satisfied any qualified liberty interest Petitioner may have had in the instruction. *See id.* at 837 (state appellate court's application of a harmless error analysis sufficient to satisfy the standard for state-created qualified liberty interests under *Clemons*).

Second, Petitioner's argument that the trial court failed to comply with *Dewberry* does not state a federal claim for the violation of due process. A challenge to a jury instruction solely as an error under state law, i.e., law stemming from the state court decision in *Dewberry*, does not state a claim cognizable in federal habeas corpus proceedings. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 71-72 (1991) (federal habeas corpus relief is not available for violations of state law or for alleged error in the interpretation or application of state law).

Assuming arguendo that Petitioner had raised a federal claim, a state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceeding. *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). The error must so infect the trial that
10

the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. *See id.* Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 745 (9th Cir. 1995).

Here, the state appellate court found that the instruction under *Dewberry* was unnecessary in light of the other instructions, especially CALCRIM No. 640, which was found to have "adequately conveyed the import of *Dewberry*." *Inostroz*, 2016 WL 6212026, *6. As such, the state appellate court determined that when read as a whole, the trial court's instructions provided the protections mandated by the *Dewberry* court. *Id.* The jurors were instructed on the elements of first and second degree murder, and of involuntary manslaughter. 2CT 237-238, 241. The jurors were instructed that "if they had a reasonable doubt about whether defendant committed second degree murder but unanimously agreed he committed involuntary manslaughter, they must give defendant the benefit of this doubt by finding him guilty only of the latter." *Inostroz*, 2016 WL 6212026, *6. The jurors were also instructed that "they could not convict defendant of the lesser offense of involuntary manslaughter unless they unanimously agreed he was not guilty of first or second degree murder." *Id.* Thus, this Court finds that these instructions conveyed the essence of a state *Dewberry* instruction and did not render Petitioner's trial fundamentally unfair under the federal Constitution.

Accordingly, Petitioner is not entitled to federal habeas relief on this first due process claim, and it is DENIED.

### 2. Claim 2: Prior Bad Act

Petitioner contends that the trial court erred in admitting a prior bad act to establish his intent. Dkt. No. 1 at 28-31. Specifically, the trial court admitted testimony that, "two days before the shooting, Maiko Ross (a convicted felon who was a friend of the victim) overheard Petitioner argue with the victim over money and say that he had "shot people for less than this." *Id.* at 28. Defense counsel objected to Ross's trial testimony relating to this prior bad act under California Evidence Code § 352 and requested an evidentiary hearing. *Id.* During the hearing, Ross testified that she knew Petitioner because he regularly came over to the house Ross shared with Silva and Bode. *Id.* Two days before the shooting, Ross was in her living room playing a card game, when

11

she overheard Petitioner and the victim arguing on the front porch over money that had been taken off of Petitioner's food stamp card. *Id.* Petitioner was heard telling the victim that he had killed people for less than what she owed him. *Id.* Following this testimony, the trial court overruled defense counsel's objection and admitted the evidence upon finding it "highly relevant with respect to possible intent" and not substantially prejudicial. *Inostroz*, 2016 WL 6212026, *8. The state appellate court noted that defense counsel made a tactical decision to question Ross on cross-examination to elicit the exact statement made by Petitioner: "I've killed people for less." *Id.*

The Court liberally construes Petitioner's contentions as a claim that the trial court erred in allowing evidence of the prior bad act under California Evidence Code § 1101(b) and that such evidence should otherwise have been excluded under California Evidence Code § 352. Section 1101(b) permits admission of evidence, including uncharged misconduct, when it is relevant to establish some fact other than the person's character, such as motive or intent. Under section 352, a trial court is to exclude evidence where the probative value of the evidence is substantially outweighed by the potential for prejudice.

On direct appeal, the state appellate court rejected Petitioner's claim that the trial court improperly admitted evidence of the prior bad act. *Inostroz*, 2016 WL 6212026, *7-8. The court found "no bases for disturbing the trial court's admission of the challenged evidence," stating as follows:

> As the trial court aptly noted, the only defense offered at trial was that defendant had accidentally fired his gun, killing Parkins, after Silva grabbed his arm in an attempt to stop his assault on Parkins. The fact that defendant made a threatening statement just two days earlier that he had killed over less money than she owed him is indeed highly relevant to prove the opposite—to wit, that he deliberately fired his weapon at Parkins out of anger at her perceived theft of his money. (*People v. Rogers* (2013) 57 Cal. 4th 296, 327 [trial court was "well within its discretion" in admitting other crimes evidence on the element of intent where a key issue was whether the murder was premeditated and deliberate and committed with express malice].) While defendant's choice of words may have proved prejudicial at trial, it was not unduly so. (*People v. Karis* (1988) 46 Cal. 3d 612, 638 ["Undue prejudice" refers not to evidence that proves guilt, but to evidence that prompts an emotional reaction against the defendant and tends to cause the trier of fact to decide the case on an improper basis: 'The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence'"].)

Finally, as the People note, defense counsel made a tactical decision to question Ross on cross-examination regarding the argument she allegedly overheard between defendant and Parkins, directly asking what defendant had said to Parkins after accusing her of taking money from his card:

"A. And I guess he found out there was ten bucks missing, maybe twenty dollars missing, some number low like that missing, it was his money.

Q. You said he then made a statement to her?

A. Yes.

Q. That was what?

A. I've killed people for less.

Q. What?

A. I've killed people for less."

Under these circumstances and given the substantial relevance of this challenged testimony to the hotly disputed issue of intent, there is no basis whatsoever for disturbing the trial court's ruling.

*Id.* at \*8.

A claim that the state trial court erred in admitting evidence, as a general matter, does not present a cognizable habeas claim. *See Estelle*, 502 U.S. at 67-68, 72 (state court's incorrect application of state evidentiary law to allow evidence of prior bad acts did not present a claim cognizable by a federal habeas court); *Swarthout v. Cooke*, 562 U.S. 216, 219-21 (2011) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law'"). The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir. 1986). Due process is violated only if there are "no permissible inferences the jury may draw from the evidence." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).

Here, Respondent argues the state appellate court "reasonably concluded that permissible inferences rendered admission of the challenged evidence reasonable and that any prejudice was

insufficient to render the conviction unfair." Dkt. No. 4-1 at 18 (citing *Estelle*, 502 U.S. at 67). Respondent points out that "other than [P]etitioner's own words, no evidence was introduced that [P]etitioner had in fact committed other murders as stated in the prior threat." *Id.* Thus, Respondent contends that "the jury was left with three inferences, none of which reasonably precluded admission of the statement as unduly inflammatory," explaining that:

> First, jurors could reasonably infer the statement was false hyperbole designed to frighten his victim. Second, jurors could determine the statement was true, and thus, as earlier discussed, had significant probative value of petitioner's intent. Third, jurors could have inferred, as defense counsel argued, that the witness who overhead the threat was unreliable since police reports did not support her assertion that she had told them of appellant's statement.

*Id.* at 18-19 (citing 4RT 404-405). The Court agrees that these were permissible inferences that the jury could draw from the evidence.

Nor did any arguable error in admitting the evidence render the trial prejudicially unfair under *Brecht*. 507 U.S. at 637. As the state appellate court found in its analysis of the first claim, the evidence establishing Petitioner's guilt and criminal intent was substantial. *Inostroz,* 2016 WL 6212026, *3-6. The record reflects that, upon learning the victim was coming to the hotel room, Petitioner put his .38 caliber revolver in his pants. *Id.* at *6. Once the victim arrived, Petitioner confronted her, grabbed her by the hair, slapped away the money she offered him in repayment, and struck her in the head with the butt of his gun. *Id.* The state appellate court also observed that the prior bad act was raised by defense counsel during Ross's cross-examination. *Id.* As Respondent points out, "[t]he defense elicited this detail to undermine the credibility of the witness who overheard the threat by impeaching her claim that she had reported the threat to police." *Id.* at 18 fn. 11 (citing 3RT 168-170, 4RT 404-405). In summary, Respondent argues that the state appellate court "reasonably found the evidence was neither inflammatory nor unduly prejudicial, highlighting that the defense had elicited much of the detail surrounding the specifics of [P]etitioner's prior threat." Dkt. No. 4-1 at 18. This Court again agrees, and finds that the state appellate court's rejection of Petitioner's evidentiary claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

Accordingly, Petitioner is not entitled to habeas relief based on this alleged due process

violation, and his second claim is DENIED.

### C. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard, *id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## IV. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk of the Court shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated: 1/21/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge

15